IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RENE A. CHANDLER, CG-7414,  )
    Petitioner,  )
      )
    v.  )  2:13-cv-800
      )
SUPERINTENDENT FOLINO,  )
    Respondent.  )

REPORT and RECOMMENDATION

I. Recommendation:

It is respectfully recommended that the petition of Rene A. Chandler for a writ of habeas corpus be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

II. Report:

Rene A. Chandler, an inmate at the State Correctional Institution at Greene has presented a petition for a writ of habeas corpus which he has been granted leave to prosecute in forma pauperis.

Chandler is presently serving a life without parole sentence following his conviction upon a plea of guilty to second degree murder and arson. This sentence was imposed on February 17, 1994.[1] There then proceeded a tortured appellate/post-conviction process which is not relevant here[2], but ultimately on December 12, 2008, the Superior Court affirmed the judgment of sentence.[3] Allowance of appeal to the Pennsylvania Supreme Court was not sought.

On September 11, 2009, Chandler filed a pro se post-conviction petition and brief.[4] On September 25, 2011, that petition was dismissed.[5] A timely notice of appeal was filed and on November 1, 2011, that appeal was discontinued.[6] However, in the interim, on October 4, 2011,

---

[1] See: Petition at ¶¶ 1-6.
[2] See: Appendix at pp.441-444.
[3] Id. at pp.439-454.
[4] Id. at pp.455-576.
[5] Id. at pp.599-600.
[6] Id. at p.609.

1

the Court of Common Pleas withdrew its dismissal of the post-conviction petition and appointed new counsel to represent Chandler.[7] On February 29, 2012, the petition for post-conviction relief was denied.[8] An appeal was filed in the Superior Court and on December 13, 2012, the Superior Court affirmed the denial of post-conviction relief.[9] Leave to appeal was denied by the Pennsylvania Supreme Court on May 29, 2013.[10]

In the instant petition executed on June 6, 2013 and received in this Court on June 12, 2013, Chandler contends he is entitled to relief on the following grounds:

1. Counsel was ineffective for not protecting the petitioner's due process rights during the preliminary arraignment proceedings, in regard to the complaint for criminal homicide…

2. Counsel was ineffective for failing to investigate the case itself, before the petitioner was induced to plead guilty…

3. Counsel was ineffective for failing to even try and get the petitioner a plea bargain before having the petitioner plea[d] guilty, and counsel was ineffective for failing to advise the petitioner that he was unable to get the petitioner a plea bargain after counsel told the petitioner that he was working on one.

4. The trial court erred in finding the evidence sufficient to support the guilty plea to second degree murder, or whether a lesser degree of murder should have been found.

5. Counsel was ineffective for failing to investigate and raise the issue of petitioner's prior history of drug and alcohol abuse that started when the petitioner was ten (10) years old. And up until the time the crime occurred, along with the petitioner's mental health history, that also began when the petitioner was very young, and up until the present day.

6. P.C.R.A. counsel was ineffective when she failed to protect the petitioner's due process rights when they filed a motion for leave to withdraw as P.C.R.A. counsel for filing a no merit letter.

7. [Subsequent] P.C.R.A. counsel was ineffective when they failed to protect the petitioner's due process rights when they filed a motion for leave to withdraw as P.C.R.A. counsel and for filing a no merit letter.

---

[7] Id. at pp.610-611.
[8] Id. at pp.647-648.
[9] Id. at pp.948-964.
[10] Id. at p.1202.

8. [Trial] counsel was ineffective for failing to investigate the Commonwealth's witness (DiPerna) to see if he was at all involved in the crime itself.

9. The trial court was in error when they denied the petitioner's P.C.R.A. petition just because both old and new P.C.R.A. counsel filed a standard no merit letter.

10. Both the Superior Court and the state Supreme Court erred when they both denied the petitioner's P.C.R.A. appeals, and also the petitioner's due process rights.

The background to this prosecution is set forth in the December 13, 2012 Memorandum of the Superior Court:

> On September 30, 1992, at approximately 5:15 a.m., firefighters were called to the house fire at 533 Brownsville Road in Mt. Oliver, a two-story apartment house. Richard Strang ("Strang") lived on the second floor and Richard Jenkins ("Jenkins") lived on the first floor of the building. After extinguishing the fire, the firefighters found the body of Jenkins, who was pronounced dead at the scene. The Allegheny County Coroner subsequently concluded that Jenkins died as a result of smoke inhalation. It was determined that the fire began on a wooden side porch and that a liquid accelerant, gasoline, had been used to start the fire.
>
> On the morning of the fire, homicide detectives were called to the scene. They began their investigation at a gas station in close proximity to the scene of the fire and encountered Michael DiPerna ("DiPerna") and appellant. At the time, appellant was holding a small paper bag. When asked if he would speak to the detectives, appellant asked to be excused to use the restroom. Upon his return, the detectives noticed that he was no longer carrying the paper bag. The detectives asked what he had done with the paper bag and appellant denied ever having possessed a bag. The bag was discovered in a trashcan in the restroom and the detectives noted that it smelled like gasoline. Examination of appellant's shoes and pants by an arson dog also came back positive for gasoline. The bag was also submitted to a crime lab and was found to have contained gasoline.
>
> Appellant initially denied any involvement in the fire but later indicated that he had a recent confrontation with Strang, the tenant on the second floor. Appellant stated that Strang was unstable and had physically threatened him and accused him of stealing his property. Strang later indicated to police that he was angry with appellant, who promised to look after Strang's possessions while he served time in jail. Upon Strang's release, he noticed a number of his possessions were missing.
>
> Eventually, appellant admitted that he had started the fire and waived his constitutional rights to provide a statement to the police. Specifically, appellant admitted that he went to the nearby gas station and placed some gasoline in a

plastic container. The gas station attendant asked him what he planned to do with the gas and appellant explained that he intended to use it to light fire to the apartment house. Appellant then poured the gasoline on the wooden porch and lit it with his lighter. Appellant returned to the same gas station, refilled the contained with gasoline and returned to pour more gas onto the porch. Appellant alleged that he believed the house was uninhabited at the time. He explained that he lit the fire to force Strang to leave the area and leave him alone. Appellant also averred that he was intoxicated and/or suffering from some form of psychological disorder both at the time he started the fire and at the time he confessed to the detectives.

Appellant was charged with criminal homicide and two counts of arson. On June 7, 1993, appellant, represented by Sumner Parker, Esq., pled guilty to two counts of arson, and entered a general plea of guilty on the charge of criminal homicide, with the degree to be determined by the court. Appellant had completed a written colloquy prior to entering the plea. Following an extensive oral colloquy, the court accepted appellant's guilty plea.[11]

"A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences.'" Bradshaw v. Stumpf, 545 U.S. 175,183 (2005); United States v. Broce, 488 U.S. 563,569 (1989)("when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea , as a general rule, foreclose the collateral attack."). Thus, our inquiry here is limited to whether or not the plea which Chandler entered met constitutional muster.

At the plea hearing held on June 7, 1993, the petitioner testified that he was able to read, write and understand the English language (TT.6/7/93 pp.3,5); that the fully understood the degrees of homicide and manslaughter and the possible penalties associated with each crime as well as the arson charges and possible penalty (TT.6/7/93 pp.7,9); that he had discussed the charges with his attorney who also explained the possible penalties (TT.6/7/93 p.9); that he fully understood his constitutional rights and acknowledged that by pleading guilty he was relinquishing those rights and admitting his guilt (TT.6/7/93 pp.10-18,19); that by pleading guilty he recognized that the court would ultimately determine the degree of culpability after reviewing psychological and psychiatric reports (TT.6/7/93 p. 18-19); that he was satisfied with

---

[11] Id. at pp.948-950.

his representation by counsel (TT.6/7/93 p.19-20); that no force or promises had been made to induce his plea (TT.6/7/93 p.20) and that he was pleading guilty because he was indeed guilty (TT.6/7/93 p.20).

At the post-conviction hearing, the petitioner testified that he believed defense counsel had been negotiating with the District Attorney for a voluntary manslaughter plea (TT.10/2/01 pp.7-8); that when he learned that there was no plea bargain he wanted to go to trial since he recognized that in pleading he would face a mandatory life sentence (TT10/2/01 p.10); that he informed the trial judge that he would not be withdrawing his plea (TT.10/2/01 p.11); that counsel had informed him that he would not provide representation if he opted to go to trial (TT.10/2/01 p.11); that he did not realize that he was pleading guilty to second degree murder because the judge had indicated that he would determine the degree of the offense after reviewing the psychiatric report (TT..10/2/01 p.13) and that he had asked his counsel to file an appeal (TT.10/2/01 pp.11-12,14). Thus, it cannot be said that the plea was not knowingly and voluntarily entered.

However, the question becomes whether the plea was entered with the effective assistance of counsel. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189,197 (3d Cir.2010) cert. denied 131 S.Ct. 1673 (2011). As a result, if a petitioner fails on either prong, he loses.

5

Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006). That is, the petitioner must demonstrate that but for counsel defective performance a different result would have occurred. Shotts v. Wetzel, 2013 WL 3927730 (3d Cir. 2013).

      At the post-conviction hearing trial counsel also testified. He stated that he had met with the petitioner many times prior to the plea and had told the petitioner that he would try to negotiate a third degree murder plea (TT.10/2/01 p.16); that he was never successful in securing a plea agreement (TT.10/2/01 p.16); that the petitioner was very much aware of his choices (TT.10/2/01 p.17); that the evidence against the petitioner was overwhelming (TT.10/2/01 pp.21-22); that he did not believe that intoxication would reduce the offense from second degree homicide (TT.10/2/01 p.22); that his strategy was for the petitioner to accept responsibility for the crimes with the hope of achieving future clemency (TT.10/2/01 pp.21,23-24), and that he had no recollection of being requested to file an appeal (TT.10/2/01 pp.18,19). Thus, it is apparent that counsel who was unsuccessful in negotiating a plea believed that there was no valid defense which could be presented if the case went to trial, and that the only possibility of future leniency would arise if the petitioner admitted his guilt, and subsequently applied for clemency. While perhaps more wishful thinking than reality, this decision was a matter of strategy which counsel viewed as the only possible hope for the petitioner to serve less than a life sentence. As a matter of sound trial strategy, it is not subject to relief here. Rolan v. Vaughn, supra.

      Because the petitioner's conviction was not secured in any manner contrary to federal law as determined by the United States Supreme Court nor involved an improper application of that law, Chandler is not entitled to relief here. Accordingly, it is recommended that the petition of Rene A. Chandler for a writ of habeas corpus be dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

      Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections within fourteen (14) days of this date and mailing them to United States District Court, 700 Grant Street, Pittsburgh PA 15219-1957. Failure to file timely objections will waive the right to appeal.

Respectfully submitted,
s/ Robert C. Mitchell
United States Magistrate Judge

Filed: September 16, 2013